UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARVEY MIGUEL ROBINSON,<br>          Petitioner,<br><br>        v.<br><br>JEFFREY BEARD, Commissioner, Pennsylvania Department of Corrections; DAVID DIGUGLIELMO, Superintendent of the State Correctional Institution at Graterford; FRANK TENNIS, Superintendent of the State Correctional Institution at Rockview; and LEHIGH COUNTY DISTRICT ATTORNEY,<br>          Respondents. | :<br>:<br>:<br>:<br>:<br>:   No. 2:06-cv-00829<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**O P I N I O N**
Motion to Alter Judgment Pursuant to Rule 59(e), ECF No. 84 — Denied

**Joseph F. Leeson, Jr.**                                                                 **June 10, 2021**
**United States District Judge**

## I.    INTRODUCTION

       This matter involves Petitioner Harvey Robinson, a prisoner under sentence of death in Pennsylvania, who seeks a writ of habeas corpus from this Court.  In his petition, Robinson challenged his sentence of death as to the murder of Jessica Jean Fortney.  In an Opinion dated September 8, 2020, this Court fully reviewed Robinson's petition and denied it in its entirety.  Robinson now files the present Motion to Alter Judgment Pursuant to Rule 59(e).  Therein, Robinson alleges error in this Court's analysis of three of the claims in his petition.

       After review of Robinson's motion, this Court's Opinion dated September 8, 2020, and the underlying record in this case, this Court denies Robinson's motion to alter judgment.

## II. BACKGROUND

As the facts are set out in full in this Court's Opinion dated September 8, 2020, only a brief summary is provided here. *See Robinson v. Beard*, No. 06-cv-829, 2020 WL 5362133, at *1-6 (E.D. Pa. Sept. 8, 2020), ECF No. 82. Robinson was charged with the first-degree murders of Joan Burghardt, Charlotte Schmoyer, and Jessica Jean Fortney, as well as other crimes that accompanied those murders. *See id.* at *5. Following a trial by jury in the Lehigh County Court of Common Pleas, Robinson was found guilty of three murders of the first degree and all of the other offenses related to the murders of Burghardt, Schmoyer, and Fortney. *See id.* In the penalty phase, the jury returned a sentence of death for each of the three murder convictions.[1] *See id.*

Robinson filed a direct appeal to the Pennsylvania Supreme Court, raising issues related to the pretrial phase, guilt phase, and penalty phase. *See id.* at *6-7. The Supreme Court rejected Robinson's claims and affirmed the judgment of sentence. *See id.* at *7. Thereafter, Robinson filed a petition for a writ of habeas corpus pursuant to the Pennsylvania Post Conviction Relief Act (PCRA). *See id.* The PCRA court denied his petition in its entirety, and the Pennsylvania Supreme Court affirmed. *See id.*

Robinson timely filed a federal habeas petition, asserting fourteen claims that included trial court error, ineffective assistance of counsel, and prosecutorial misconduct. *See id.* at *7-8. On September 8, 2020, this Court addressed the petition, denying it in its entirety. *See id.* at *1.

---

[1] Robinson was later resentenced for the murders of Burghardt and Schmoyer. *See Robinson*, 2020 WL 5362133, at *6. He was resentenced to life without parole for each of those two murders. *See id.* Robinson remains under a sentence of death for the murder of Fortney. *See id.*

Robinson timely filed the present Motion to Alter Judgment Pursuant to Rule 59(e).  *See* Mot., ECF No. 84.  Therein, Robinson asks this Court to reconsider its review of Claims IV,[2] VI,[3] and XIII[4] from his petition.  *See id.*  The Lehigh County District Attorney responded in opposition to the motion.  *See* Resp., ECF No. 86.

## III. LEGAL STANDARD

**Motion to Alter Judgment under Rule 59(e) – Review of Applicable Law**

The purpose of a motion to alter judgment under Rule 59(e) of the Federal Rules of Civil Procedure is to "correct manifest errors of law or fact, or to present newly discovered evidence." *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *see also* FED. R. CIV. P. 59(e). A party seeking alteration of a judgment must show at least one of the following grounds:

"(1) an intervening change in the controlling law;"

"(2) the availability of new evidence that was not available when the court granted the motion . . . ;" or

---

[2]  In Claim IV, Robinson asserted that
> [t]he Commonwealth's failure to timely disclose that a key Commonwealth witness had been hypnotized prior to her testimony and initially identified someone else as her attacker violated Petitioner's right to due process, right to a fair trial, and right to be free from cruel and unusual punishment; trial counsel rendered ineffective assistance.

*See Robinson*, 2020 WL 5362133, at *8.

[3]  In Claim VI, Robinson asserted that
> [p]etitioner was denied his right to a fair trial, to a fair and impartial jury and to due process in violation of his rights under the Sixth and Fourteenth Amendments because the jury pool from Lehigh County was saturated with highly prejudicial pretrial publicity. All prior counsel were ineffective for failing to properly litigate this issue at trial and on direct appeal.

*See Robinson*, 2020 WL 5362133, at *8.

[4]  In Claim XIII, Robinson asserted that "[t]he trial court violated Petitioner's right to compulsory due process, a fair trial and his right to be free from cruel and unusual punishment by failing to grant a short continuance to allow a critical mitigation witness to arrive in court." *See Robinson*, 2020 WL 5362133, at *8.

"(3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

"Motions under Rule 59(e) should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *Ruscavage v. Zuratt*, 831 F. Supp. 417, 418 (E.D. Pa. 1993). "It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through--rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal quotations omitted).

**IV.     DISCUSSION**

Robinson does not allege that a change in the controlling law or new evidence warrants reconsideration of his claims. Rather, Robinson exclusively alleges that clear errors of law or fact made by this Court would cause manifest injustice if left uncorrected. Robinson alleges multiple errors of law and fact in this Court's review of Claims IV, VI, and XIII in his petition. Each of the alleged errors are addressed in turn below. In summary, Robinson fails to present any error of law or fact that warrants alteration of this Court's judgment. Accordingly, Robinson's motion is denied.

**A.     Claim IV: Testimony of Denise Sam-Cali**

In Claim IV of his petition, Robinson asserted that the Commonwealth failed to disclose the fact that prosecution witness Denise Sam-Cali had been hypnotized and that she initially suggested a different individual, Sal Rosado, as the perpetrator of the attack against her. *See Robinson*, 2020 WL 5362133, at *25. In the September 8, 2020 Opinion, this Court reviewed Claim IV and determined that the Commonwealth had not violated *Brady* in its handling of Sam-Cali and her hypnosis and otherwise found that counsel was not ineffective in failing to object to the testimony. *See id.* at *26-27.

Robinson now challenges this Court's disposition of Claim IV. Robinson alleges four points of error in this Court's analysis. First, Robinson asserts that this Court misapprehended his argument in Claim IV. *See* Mot. 4. Second, Robinson argues that this Court improperly limited its review of the *Brady* violation. *See id.* at 6. Third, Robinson claims that this Court inappropriately placed a burden on him to inform his counsel about the hypnosis. *See id.* at 4-5. Fourth, Robinson asserts that this Court misapplied the law in determining materiality or prejudice under *Brady*.[5] *See id.* at 6. After review, Robinson fails to allege error that would warrant alteration of this Court's judgment as to Claim IV.

### 1. The Court did not misapprehend Robinson's argument in Claim IV.

Robinson first asserts that this Court misapprehended his argument with respect to Claim IV. *See id.* at 4. In his motion, Robinson suggests that this Court incorrectly focused on the Government's disclosure of the *fact* of Sam-Cali's hypnosis rather than disclosure of the *statements* made under hypnosis. *See id.* Notwithstanding, Robinson fails to show clear error that, if left uncorrected, would cause a manifest injustice.

In reviewing Claim IV, this Court responded directly to the claim in Robinson's petition. Therein, Robinson clearly states that the Commonwealth "fail[ed] to timely disclose that a key Commonwealth witness, Ms. Denise Sam-Cali, had been hypnotized and interviewed prior to her trial testimony . . . ." *See* Pet. 61. That allegation strikes directly at the *fact* of Sam-Cali's hypnosis. Accordingly, this Court did not misconstrue Robinson's claim in finding that a letter from the Commonwealth had placed Robinson on notice of the hypnosis.

Moreover, as discussed in Section IV.A.2, *infra*, this Court did review the possibility that the Commonwealth's failure to turn over certain statements from Sam-Cali's hypnosis

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

represented a *Brady* violation. Accordingly, this ground does not warrant alteration of this Court's judgment as to Claim IV.

      **2.      The Court appropriately addressed Robinson's *Brady* violation claim, and the Court declines to review other claims not fairly presented to the state courts.**

Robinson asserts that this Court improperly limited its review of his *Brady* claim to only Sam-Cali's statements regarding Sal Rosado as a potential assailant. *See* Mot. 6. He claims that this court ignored his allegations of additional factual inconsistencies between Sam-Cali's statement and her trial testimony. Notwithstanding, this Court appropriately curtailed its review of Robinson's claims to those that were fairly presented to the state courts.

In his jurisdictional statement to the Pennsylvania Supreme Court, Robinson presented the relevant question for review as follows:

> [w]hether the trial [c]ourt erred in failing to grant a new trial based on [1] after-discovered evidence because the evidence of hypnosis was not available to counsel until after the trial, [2] the Brady violation resulting from the Commonwealth's failure to disclose the evidence of hypnosis fully and to defense counsel, and [3] the Brady violation resulting from the failure to disclose the fact that Sam-Cali had tentatively identified another individual as her assailant.

*See* Appellant's Jurisdictional Stmt. ¶ 5(G).

Thus, Robinson only raised a single factual inconsistency—that Sam-Cali had tentatively identified another individual—before the Pennsylvania Supreme Court. Robinson now claims that there are additional factual inconsistencies between Sam-Cali's original statement, statement under hypnosis, and her trial testimony that this Court did not address. *See id.*

On appeal, the Pennsylvania Supreme Court exclusively addressed the three grounds provided in Robinson's jurisdictional statement. *See Pennsylvania v. Robinson (Robinson I)*, 581 Pa. 154, 217, 219-223 (2004). The Pennsylvania Supreme Court did not address the possibility of additional inconsistencies between Sam-Cali's testimony and her prior statements

because Robinson did not raise the issue. Moreover, because the issue of Sam-Cali's hypnosis was not raised before the PCRA court or the Pennsylvania Supreme Court on PCRA review, neither addressed that issue in their review of Robinson's PCRA petition. *See Pennsylvania v. Robinson (Robinson II)*, 623 Pa. 345 (2013); *Pennsylvania v. Robinson*, No. CP-39-CR-0058-1994, 2012 WL 10028332 (Pa. Ct. Com. Pl. June 21, 2012).

Consistent with the law governing federal habeas review, this Court addressed those claims that were fairly presented to the state courts. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (state prisoner must "fairly present" federal claims to state courts). Failure to fairly present a claim to a state court results in the procedural default of that claim, absent a showing of cause and prejudice or actual innocence to excuse the default. *See Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004).

Here, Robinson attempts to introduce claims regarding Sam-Cali that were not fairly presented to the state courts. Because the state courts were not afforded an occasion to opine on the possibility of other inconsistencies in Sam-Cali's testimony, beyond the single Rosado matter enumerated by Robinson, that claim is procedurally defaulted. Robinson does not provide any showing of cause and prejudice or actual innocence to excuse the default. Accordingly, this Court did not err in limiting its review of Robinson's claims with respect to Sam-Cali to those claims that were fairly presented to the state courts.

Moreover, even if this Court were to review the defaulted claim, Robinson fails to establish a *Brady* violation. To establish a *Brady* violation, a petitioner must show:

"(1) the evidence at issue is favorable to the accused, because either exculpatory or impeaching;"

"(2) the prosecution withheld it;" and

"(3) the defendant was prejudiced because the evidence was 'material.'"
*Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011).

With respect to the first element, the inconsistencies at issue here are not exculpatory, nor do they hold impeachment value. As the Pennsylvania Supreme Court noted, Sam-Cali's suggestion of Rosado as a suspect is irrelevant for impeachment purposes. *See Robinson I*, 581 Pa. at 217-18. The same is true with any minor discrepancies in Sam-Cali's recount of the attack. Prior to trial, Robinson plead guilty to charges of burglary, aggravated assault, and attempted homicide with respect to Sam-Cali. *See id.* Pennsylvania law indicates that a defendant's plea of guilty is his acknowledgement to both the facts and the intent required to commit the charged offense. *See Commonwealth v. Anthony*, 504 Pa. 551, 475 A.2d 1303 (1984). Thus, as part of his guilty plea to the offenses involving Sam-Cali, Robinson admitted to all of the salient facts. Accordingly, any minor discrepancies in Sam-Cali's description of the assailant or the details of the attack against her would not exculpate Robinson or serve as impeachment material because (1) Robinson admitted to being the assailant and (2) Robinson admitted to the salient details of the attack. *See Robinson I*, 581 Pa. at 217-218.

Moreover, even if this Court were to assume *arguendo* that the statements could be used for impeachment purposes and that the government failed to turn them over, Robinson fails to show the requisite materiality. Notably, because Robinson had already pled guilty to charges with respect to Sam-Cali, these charges were not before the jury in the trial at issue. Rather, her testimony was put on by the government to "establish the identity of the perpetrator, his motive, intent, and a common criminal scheme." *See Robinson I*, 581 Pa. at 215. Thus, Sam-Cali's testimony was not put on for the purpose of establishing Robinson's guilt with respect to the three homicides at issue.

Justice Nigro, concurring in *Robinson I*, noted that "the evidence of [Robinson's] guilt was clearly overwhelming." *See id.* at 257 (Nigro, J., concurring). Because Sam-Cali's testimony did not involve Robinson's guilt and because the evidence of guilt was "clearly overwhelming," Robinson has not shown a reasonable probability that the outcome of the trial would have been different if the jury had heard the few discrepancies in Sam-Cali's testimony. Therefore, any minor discrepancies in Sam-Cali's testimony are immaterial and Robinson was not prejudiced by any absence of those discrepancies from the trial. Accordingly, this ground does not warrant alteration of this Court's judgment on Claim IV of Robinson's Petition.

### 3. The Court did not place any unwarranted burden on Robinson.

Next, Robinson asserts that this Court improperly placed a burden on Robinson with respect to *Brady* material. By way of background, the Commonwealth delivered a letter directly to Robinson that notified him of Sam-Cali's hypnosis. Robinson asserts that the letter should have instead been provided to his counsel, and he asserts that direct delivery to Robinson himself was contrary to Supreme Court precedent. *See* Mot. 4-5 (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). Notwithstanding, Robinson fails to allege any error that warrants alteration of this Court's judgment.

In reviewing Claim IV, this Court noted that the Commonwealth personally provided Robinson with a letter stating that Sam-Cali had been hypnotized. *See Robinson*, 2020 WL 5362133, at *26. In footnote two of the September 8, 2020 Opinion, this Court explained why the Commonwealth provided the letter to Robinson directly. *See id.* at 26 n.2. The letter was drafted and provided to Robinson the same day that Robinson was interviewed by the police, and Robinson was not yet represented by counsel in the matter. *See id.* Accordingly, in the absence of counsel, the Commonwealth provided the letter to Robinson directly.

Robinson asserts that the Commonwealth's provision of the letter directly to him violated Supreme Court precedent by placing the burden on Robinson to inform his counsel of the letter. *See* Mot. 4-5.  Notwithstanding, the case law that Robinson cites is inapposite.  Robinson cites case law that indicates "[t]he Commonwealth has a continuing obligation to disclose *Brady* material even if there is no request by the defense." *See id.* (citing *Agurs*, 427 U.S. at 107).  However, *Agurs* does *not* indicate that the Commonwealth fails to discharge that ongoing obligation if it provides *Brady* material directly to an unrepresented defendant.  Robinson does not assert that he had to request the letter, and accordingly, the Commonwealth complied with the requirements of *Agurs*.

Robinson also suggests that provision of the letter directly to him enforces a system where the "prosecutor may hide, [and] defendant must seek." *See id.* (citing *Banks v. Dretke*, 540 U.S. 668. 696 (2004)).  The facts belie this assertion.  Far from having to seek out the information himself, the Commonwealth provided the letter directly to Robinson. *See Robinson*, 2020 WL 5362133, at *26.  Accordingly, the case law cited by Robinson does not illuminate any clear error of law in this Court's analysis of the Commonwealth's provision of the letter directly to Robinson.  Therefore, this ground does not warrant alteration of this Court's judgment on Claim IV.

### 4. Robinson misconstrues this Court's discussion of prejudice.

Last, Robinson now claims that this Court inappropriately suggested that any failure by the Commonwealth to disclose Sam-Cali's statement was without prejudice to Robinson. *See* Mot. 6. Robinson suggests that, in reviewing the *Brady* claim in his Petition, this Court improperly determined that the inconsistencies in Sam-Cali's statements were "not material/prejudicial." *See id.*  Moreover, Robinson asserts that this Court should not have

weighed Sam-Cali's statements against other evidence put forth at trial, including DNA evidence. *See id.* However, Robinson's reading of this Court's Opinion misconstrues its discussion of prejudice.

This Court's discussion of the prejudice in its September 8, 2020 Opinion, with respect to Claim IV, was not conducted in the context of a possible *Brady* violation. Rather, a prejudice analysis was conducted in the context of this Court's review of Robinson's ineffective assistance of counsel claim. *See Robinson*, 2020 WL 5362133, at *27. After noting that counsel made a strategic decision to avoid discussing the hypnosis of Sam-Cali in front of the jury, this Court determined that, even if counsel's decision was objectively unreasonable, it did not result in prejudice. *See Strickland*, 466 U.S. at 494 (defining prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). The *Strickland* prejudice standard required this Court to balance Sam-Cali's statements against the other evidence presented at trial. Accordingly, there was no error of law in this Court's approach to prejudice as it related to Robinson's ineffective assistance of counsel claim on Claim IV.

Moreover, even assuming *arguendo* that this Court engaged in evidence balancing to determine *Brady* materiality, such an analysis was warranted by the governing standards. *Brady*'s materiality analysis, like *Strickland*'s prejudice analysis, provides that evidence is "material if there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different." *See Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009). Accordingly, in determining whether a *Brady* statement is material, a court must necessarily assess the probability that the introduction of that evidence into the trial would have resulted in a different outcome. In doing so, it would be wholly appropriate for a court to weigh

the alleged *Brady* material against the other evidence presented at trial. Accordingly, Robinson asserts no cognizable error, and this ground does not warrant alteration of this Court's judgment on Claim IV.

Having reviewed all of the proposed grounds for alteration of this Court's judgment on Claim IV and finding none that warrant alteration of this Court's disposition of Claim IV, Robinson's motion to alter judgment is denied with respect to Claim IV.

### B. Claim VI: Effect of Pretrial Publicity

In Claim VI, Robinson asserted that he was denied his due process rights, right to a fair trial, and right to effective counsel as a result of the pretrial publicity of his case. *See Robinson*, 2020 WL 5362133, at *30-33. In its September 8, 2020 Opinion, this Court concluded that Robinson had not stated a violation of any of those rights. Accordingly, the claim was denied.

Robinson now seeks reconsideration of this Court's disposition of Claim VI. In his motion, Robinson asserts three grounds for reconsideration. First, Robinson asserts that this Court misconstrued his argument in Claim VI related to trial counsel's ineffectiveness in drafting a sufficient motion to transfer venue. *See* Mot. 8-9. Second, Robinson argues that this Court misread the facts of the record by discounting the prejudicial nature of the publicity. *See id.* at 9-10. Third, Robinson claims that the venire pool was prejudiced by the pretrial publicity of his case. *See id.* at 10-11. After review of each of these grounds, none of them warrant alteration of the Court's judgment as to Claim VI.

#### 1. The Court did not misconstrue Robinson's argument regarding trial counsel's ineffectiveness in drafting a motion to transfer.

First, Robinson asserts that this Court misunderstood his argument regarding his counsel's effort to move for a transfer of venue. Robinson focuses on a single sentence in this

Court's Opinion where it stated that it did not believe "Robinson's argument that, had the brief of the motion been larger, the trial court would have granted the motion to transfer." *See Robinson*, 2020 WL 5362133, at *33. Although this description is an oversimplification of Robinson's underlying concerns with the motion and brief, this Court did not misconstrue, or otherwise fail to address, Robinson's concerns regarding the publicity surrounding his case and the accompanying motion to transfer. Quite the opposite, this Court undertook a thorough review of the publicity, separating out the factual coverage and highlighting articles with inflammatory rhetoric. *See id.* at *32.

Thereafter, this Court noted that, in light of the publicity, the motion that counsel filed was not objectively unreasonable. *See id.* at *33. Moreover, this Court, assuming *arguendo* that the filing was unreasonable, also discussed whether Robinson was prejudiced by any ineffectiveness, finding no such prejudice existed. *See id.* This Court thoroughly and appropriately reviewed Robinson's ineffective assistance of counsel claim with respect to Claim VI and found that trial counsel was not ineffective. Therefore, this ground does not warrant alteration of this Court's judgment as to Claim VI.

**2.    The Court's review of Claim VI accurately reflected the facts in the record before it.**

Next, Robinson asserts that this Court "misread the trial record when addressing the prejudicial impact of the pretrial publicity." *See* Mot. 9. Specifically, Robinson asserts that this Court inappropriately discounted that a factual article regarding the crimes may still have an inflammatory and prejudicial effect on a venire pool. *See id.* Notwithstanding, this Court's thorough review of the factual record in its Opinion dated September 8, 2020 belies the claim that there is any clear error of fact in this Court's analysis of Claim VI.

Contrary to Robinson's contention, this Court did not discount the effect of pretrial publicity. Rather, as the law requires, this Court sorted publicity from which prejudice may be presumed from that from which prejudice may not be presumed. *See Robinson*, 2020 WL 5362133, at *31-32 (citing, e.g., *Flamer v. Delaware*, 68 F.3d 736, 754 (3d Cir. 1995) (finding no presumption of prejudice where publicity is "factual in nature, but prejudicial and inflammatory only to the extent arising from the normal and natural reaction to any purely factual news item about a very serious crime")). As this Court noted in quoting the relevant standards, severe and extensive reporting does not necessarily give rise to prejudice. *See id.* at *31 (citing *Pursell v. Horn*, 187 F. Supp. 2d 260, 302 (W.D. Pa. 2002) (noting "lapse in time" between severe and extensive publicity and trial can dissipate prejudicial effect)).

Moreover, this Court performed a detailed review of instances of pretrial reporting in which inflammatory, non-factual language was used. *See id.* at *32. Robinson takes issue with this Court's conclusion that there was a sufficient cool-down period between those instances of inflammatory reporting and the eventual trial so as to quell any concern regarding prejudice. *See* Mot. 9. Despite Robinson's objection, inquiry into the cool-down period is required by the governing standards. *See Pursell*, 187 F. Supp. 2d at 302. In determining the prejudicial value of those reports, this Court was required to review the probability that sufficient time had lapsed between the reporting and the trial so as to dissipate any prejudicial effect. *See id.* Accordingly, this Court's review of the pretrial reporting was consistent with the law and the factual record before it. Therefore, this ground does not warrant alteration of this Court's judgment on Claim VI.

### 3. Robinson is estopped from relitigating the effect of the publicity on the venire pool.

Robinson next claims that many prospective jurors indicated during voir dire that they had seen, read, or heard about the matters in Robinson's case prior to appearing for jury selection. However, Robinson does not raise any error of law or fact with respect to this ground. Rather, it appears that Robinson wishes to relitigate a matter that has already been decided without pointing to any clear error that would warrant such reconsideration. This Court thoroughly reviewed the standards for prejudice as a result of pretrial publicity. *See id.* at *31-33. In applying those standards to the factual record, this Court determined that the relevant factors indicated a low likelihood of prejudice in the venire pool and therefore weighed against a transfer of venue. *See id.* Robinson is not permitted to seek unbridled reconsideration of an unfavorable conclusion—that is otherwise appropriate in light of the law and facts—simply because it is unfavorable. *See Glendon Energy*, 836 F. Supp. At 1122. Accordingly, this ground does not warrant alteration of the Court's judgment on Claim VI.

Having reviewed all of the proposed grounds for alteration of Claim VI and finding none that warrant alteration of this Court's disposition of Claim VI, Robinson's motion is denied with respect to Claim VI.

### C. Claim XIII: Life without Parole Instruction

In Claim XIII of his petition, Robinson claimed that his Eighth and Fourteenth Amendment rights were violated when the trial court failed to instruct the jury that life imprisonment meant life without parole. *See Robinson*, 2020 WL 5362133, at *59. This instruction is otherwise known as a "*Simmons*" instruction. *See Simmons v. South Carolina*, 512 U.S. 154 (1994). After reviewing Claim XIII in light of the governing standards, this Court

determined (1) that a *Simmons* instruction was not warranted in Robinson's case, and (2) assuming that it was, the trial court provided a clear and sufficient instruction. *See id.* at *59-61.

In his present motion, Robinson seeks reconsideration of this Court's disposition of Claim XIII. Therein, Robinson presents two grounds for reconsideration. First, Robinson asserts that this Court applied an incorrect standard for determining whether a *Simmons* instruction was necessary. *See* Mot. 13. Second, Robinson asserts that this Court erred in finding the trial court's instruction sufficient to satisfy the requirements of *Simmons*. *See id.* at 13-14. After review of both of these grounds, neither warrants alteration of the Court's judgment as to Claim XIII.

**1.     The Court applied the appropriate standard for determining whether a *Simmons* instruction was required.**

Robinson first claims that this Court erred in selecting a standard for determining whether a *Simmons* instruction is required. However, a review of this Court's Opinion belies this claim. As this Court noted, a *Simmons* instruction is required when the government places a defendant's future dangerousness at issue. *See Robinson*, 2020 WL 5362133, at *59 (citing *Simmons*, 512 U.S. at 156). Robinson seems to suggest that this Court overlooked the Supreme Court's opinion in *Kelly v. South Carolina*, 534 U.S. 246 (2002). *See* Mot. 13. Therein, the Supreme Court noted that "[e]vidence of future dangerousness under *Simmons* is evidence with a tendency to prove dangerousness in the future; its relevance to that point does not disappear merely because it might support other inferences or be described in other terms." *See Robinson*, 2020 WL 5362133, at *60 (citing *Kelly*, 534 U.S. at 254). However, this Court quoted precisely that language in describing the standard that it was required to follow. *See id.* Accordingly, despite

Robinson's contention, this Court applied the correct legal standard for determining whether a *Simmons* instruction was required.

After reviewing the factual record in light of the standards set forth in *Simmons* and *Kelly*, this Court concluded that the Commonwealth did not place Robinson's future dangerousness at issue. As instructed by *Kelly*, this Court reviewed the transcript not only for statements that explicitly mentioned future dangerousness but also for statements that addressed future dangerousness by other terms. In his motion, Robinson fails to point to any statements made by the Commonwealth that the Court misread in applying the relevant legal standards to the factual record. Accordingly, this ground does not warrant alteration of this Court's judgment on Claim XIII.

### 2. The Court did not err in finding the trial court's resultant instruction sufficient under *Simmons*.

Next, Robinson argues that this Court erred in finding that the trial court's *Simmons* instruction was sufficient. *See* Mot. 13-14. Robinson asserts that the trial court's eventual instruction of "[l]ife is life" only served to contradict its prior instruction, thereby leaving the jury confused. *See id.* at 14. However, this Court's review of the matter illuminates the opposite. At no time did the trial court say that parole was available. In fact, in its first statement after the jury asked if life meant life without parole, the trial court stated, in part, "that's the present law." *See Robinson*, 2020 WL 5362133, at \*59. After a brief sidebar with counsel, the trial court then stated, "[l]ife is life. There won't be any parole. Life is life." *See id.* The trial court's eventual instruction was a clarification of its prior statement, not a contradiction. Moreover, the trial court's eventual instruction was crystal clear regarding the availability of parole. Accordingly, this Court was not in error in finding that the trial court's

eventual instruction to the jury was a clear statement of the law in Pennsylvania regarding life without parole. Therefore, this ground does not warrant alteration of this Court's judgment as to Claim XIII.

Having reviewed the two proposed grounds for alteration of Claim XIII and finding neither warrants alteration of this Court's judgment as to Claim XIII, Robinson's motion is denied with respect to Claim XIII.

## V. CONCLUSION

Robinson seeks reconsideration of three claims that were reviewed and decided in this Court's Opinion dated September 8, 2020. Robinson claims that errors of law or fact warrant reconsideration of those three claims. However, after a review of all of the proposed grounds for reconsideration, this Court finds no clear error of law or fact that, if left uncorrected, would work a manifest injustice. Therefore, Robinson's arguments do not warrant an alteration of this Court's judgment as to any of the three claims raised in the motion. Accordingly, Robinson's motion is denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge